UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

SEAN CHANEY,

    *Defendant*.

23-CR-451 (ARR)

**OPINION & ORDER**

ROSS, United States District Judge:

Defendant Sean Chaney is currently serving a term of federal supervised release after pleading guilty to several felonies and being sentenced to 166 months' imprisonment. Compl. ¶ 2, ECF No. 1; *United States v. Chaney*, 05-CR-596, ECF Nos. 1, 40, 109. On October 18, 2023, probation officers went to Mr. Chaney's home to conduct a pre-scheduled visit and observed a handgun in plain sight. Compl. ¶¶ 3–4. Mr. Chaney was subsequently charged with violating 18 U.S.C. § 922(g)(1), which makes possession of a firearm unlawful for any person convicted of "a crime punishable by imprisonment for a term exceeding one year." Indictment ¶ 1, ECF No. 7.

On April 9, 2024, Mr. Chaney moved to dismiss the indictment on the ground that Section 922(g)(1) is unconstitutional under the Second Amendment to the United States Constitution in light of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). Mot. Dismiss, ECF No. 23; *see* U.S. Const. amend. II ("A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."). The government filed its opposition on April 23, 2024, and Mr. Chaney filed a reply brief on April 27, 2024. Mem. Opp'n Mot. Dismiss ("Opp'n"), ECF No. 24; Reply, ECF No. 25.

For the following reasons, Mr. Chaney's motion is DENIED.

**LEGAL BACKGROUND**

In 2008, the Supreme Court relied on text and history to hold that the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 595, 635 (2008). It accordingly invalidated the District of Columbia's ban on handgun possession in the home. *Id.* at 635. *Heller* did not directly address the Second Amendment rights of those with felony convictions, but it noted that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 626.

In 2010, the Supreme Court reaffirmed *Heller*'s holding and concluded that "the right to keep and bear arms for the purpose of self-defense . . . is fully applicable to the States." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 749–50 (2010). Although *McDonald*, like *Heller*, did not directly address the Second Amendment rights of individuals with felony convictions, a plurality of the Court reiterated that neither *Heller* nor *McDonald* "cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons." *Id.* at 786 (quotation omitted).

In the years following *Heller* and *McDonald*, the Courts of Appeals "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combine[d] history with means-end scrutiny." *Bruen*, 597 U.S. at 17. At the first step, the government had to "justify its regulation by establishing that the challenged law regulate[d] activity falling outside the scope of the right as originally understood." *Id.* at 18 (cleaned up). "[I]f the historical evidence at this step [wa]s inconclusive or suggest[ed] that the regulated activity [wa]s *not* categorically unprotected, the courts generally proceed[ed] to step two," which looked to "how close the law c[ame] to the core of the Second Amendment right and the severity of the law's burden on that right." *Id.*

2

(quotations omitted). If the regulation burdened a "core" Second Amendment right, the courts would apply strict scrutiny, asking whether the government could prove that the law was "narrowly tailored to achieve a compelling governmental interest." *Id.* at 18–19 (quotation omitted). Otherwise, the courts would apply intermediate scrutiny, asking whether the government could show that the regulation was "substantially related to the achievement of an important governmental interest." *Id.* at 19 (quotation omitted).

In *Bruen*, the Supreme Court held that although the first step of this inquiry was "broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history," the second step's means-end analysis was "inconsistent with *Heller*'s historical approach." *Id.* at 19, 24. It established a new framework for applying the Second Amendment: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* at 24 (quotation omitted). Using this two-step inquiry—analyzing first whether the Second Amendment's plain text covered the petitioners' conduct, and second whether the regulation at issue was consistent with the nation's historical tradition of firearm regulation—the Court invalidated New York State's licensing regime for the concealed carry of handguns in public. *Id.* at 11, 31–71.

*Bruen*, like *Heller* and *McDonald* before it, did not specifically address the Second Amendment rights of individuals with felony convictions. Indeed, the Supreme Court has not yet addressed the constitutionality of Section 922(g)(1) at all—rather, it has stated only in dicta that it believes that prohibitions on the possession of firearms by those with felony convictions are valid.

3

*See Heller*, 554 U.S. at 626; *McDonald*, 561 U.S. at 786. Supreme Court dicta, although entitled to "the greatest deference," "ought not to control the judgment in a subsequent suit, when the very point is presented for decision." *Donovan v. Red Star Marine Servs., Inc.*, 739 F.2d 774, 782 (2d Cir. 1984) (quotation omitted). The Second Circuit, however, *did* address "the very point" at issue in this case in *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013), a short per curiam opinion issued prior to *Bruen*. The entirety of the court's reasoning is reproduced below:

> [In both *Heller* and *McDonald*,] the Supreme Court clearly emphasized that recent developments in Second Amendment jurisprudence should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *District of Columbia v. Heller*, 554 U.S. 570, 626, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008); *see also McDonald v. City of Chicago*, —— U.S. ——, 130 S.Ct. 3020, 3047, 177 L.Ed.2d 894 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons . . . . We repeat those assurances here." (citation and internal quotation marks omitted)). We therefore join every other circuit to consider the issue in affirming that § 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons.

*Id.* at 281–82. *Bogle* accordingly "turned . . . 'dicta' in *Heller* and *McDonald* into binding precedent." *United States v. Hampton*, 676 F. Supp. 3d 283, 301 (S.D.N.Y. 2023); *see also Johnson v. Harder*, 512 F.2d 1188, 1189 (2d Cir. 1975) (per curiam) (noting the precedential nature of per curiam opinions). A threshold issue in the motion before me—ultimately the dispositive issue—is therefore whether *Bogle* is still binding precedent after *Bruen*. As explained below, I conclude that it is.

## DISCUSSION

"Generally, a published decision by the Second Circuit binds future panels and district courts within the Circuit unless the decision is overruled by the en banc Second Circuit or by the Supreme Court." *United States v. Fayton*, No. 23-CR-1 (JLR), —— F. Supp. 3d ——, 2023 WL 8275924, at *3 (S.D.N.Y. Nov. 30, 2023). There is an exception, however, for instances where "an

4

intervening Supreme Court . . . decision . . . 'casts doubt on [the] controlling precedent.'" *Hoeffner v. D'Amato*, 605 F. Supp. 3d 467, 481 (E.D.N.Y. 2022) (quoting *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 154 (2d Cir. 2015)). That intervening decision "need not address the precise issue already decided" by the circuit court, but there must be a "'conflict, incompatibility, or inconsistency' between the Supreme Court's decision and circuit precedent." *Id.* (quoting *In re Arab Bank*, 808 F.3d at 155). A district court "must proceed even more cautiously" than the Second Circuit "in deciding whether an intervening Supreme Court decision overrules Second Circuit precedent, out of respect for the overall structure of the federal judiciary." *Id.* It is therefore appropriate for a district court to deviate from the circuit court's decision only if the intervening Supreme Court decision "so undermines circuit precedent that it will *almost inevitably be overruled*." *Id.* (quotation omitted) (emphasis added).

The key inquiry is therefore whether the Second Circuit will "almost inevitably" overrule *Bogle* as a result of *Bruen*. I cannot conclude that it will.

As a short per curiam opinion, *Bogle* did not offer much in the way of reasoning; it merely cited *Heller* and *McDonald*'s dicta in affirming Section 922(g)(1)'s constitutionality. *See* 717 F.3d at 281–82. Implicit in the opinion, however, might have been one of several lines of reasoning. The circuit court may have considered the statute through the now-overruled means-end test and concluded that it survived either strict or intermediate scrutiny. *See Bruen*, 597 U.S. at 18. Alternately, the court might have thought that possession of firearms by individuals with felonies fell outside the scope of the Second Amendment's plain text, and that the statute was therefore constitutional—ending the inquiry at what is now step one of the *Bruen* framework. *See Bruen*, 597 U.S. at 24, 31–33. Or the court may have reasoned that even if the conduct regulated by the statute fell within the scope of the Second Amendment, regulation of that conduct was nonetheless

5

consistent with the nation's historical tradition of firearm possession—deciding the issue on what is now step two of the *Bruen* framework. *See Bruen*, 597 U.S. at 24, 38–70. Only the first of these potential underlying rationales would be starkly at odds with *Bruen*. And it is not implausible to think that the second or third potential rationales did in fact undergird the Second Circuit's decision in *Bogle*. *See id.* at 19 (noting that *Heller*, even before *Bruen*, "demand[ed] a test rooted in the Second Amendment's text"); *Fayton*, 2023 WL 8275924, at *4 ("[T]he *Heller* majority dedicated over 40 pages to extensively analyzing the text and history of the Second Amendment.").

The Second Circuit is currently considering the constitutionality of Section 922(g)(1) in light of *Bruen*. *See Zherka v. Garland*, 22-1108 (2d Cir.); *United States v. Thawney*, 22-1399 (2d Cir.). In applying the *Bruen* framework to the statute, the circuit court could do one of several things. It could conclude that Section 922(g)(1) is unconstitutional under the *Bruen* text and history analysis, clearly overruling *Bogle*. Alternately, the court could reach the same result that it did in *Bogle* by holding either that possession of firearms by those with felony convictions falls outside the scope of the Second Amendment's plain text, or that regulation of that conduct is consistent with history and tradition. *See Bruen*, 597 U.S. at 24. If the court upholds the statute's constitutionality under the *Bruen* framework, it need not necessarily overrule *Bogle*. Rather, the court could conceivably cite *Bogle* as reaching the same result and characterize its opinion as expanding on *Bogle*'s reasoning.

Any of the results outlined above seems equally plausible, given *Bogle*'s minimal reasoning and the deep divide among courts analyzing Section 922(g)(1) after *Bruen*. *See, e.g.*, *United States v. Gay*, 98 F.4th 843, 847 (7th Cir. 2024) (upholding the statute at *Bruen* step one); *United States v. Jackson*, 69 F.4th 495, 501–06 (8th Cir. 2023) (upholding the statute at *Bruen* step two); *United States v. Davila*, No. 23-CR-292 (JSR), ––– F. Supp. 3d –––, 2023 WL 5361799, at

*2–5 (S.D.N.Y. Aug. 22, 2023) (same); *United States v. White*, No. 23-CR-140 (NSR), 2023 WL 6066201, at *4–7 (S.D.N.Y. Sept. 18, 2023) (same); *Range v. Attorney General*, 69 F.4th 96, 101–06 (3d Cir. 2023) (invalidating the statute at *Bruen* step two); *United States v. Duarte*, No. 22-50048, ⸺ F. 4th ⸺, 2024 WL 2068016, at *9–24 (9th Cir. May 9, 2024) (same); *United States v. Bullock*, 679 F. Supp. 3d 501, 534–37 (S.D. Miss. 2023) (same).

"Equally worthy jurists have disagreed about the historical record's implications for 18 U.S.C. § 922(g)(1)," *United States v. Sanders*, No. 23-CR-78 (KAM), ⸺ F. Supp. 3d ⸺, 2023 WL 8790309, at *3 (E.D.N.Y. Dec. 19, 2023), and I cannot presume to predict precisely how the Second Circuit will or will not reconcile *Bruen* and *Bogle*. I therefore cannot determine that *Bogle* will "almost inevitably be overruled" as a result of *Bruen* and must conclude that it still controls. *Hoeffner*, 605 F. Supp. 3d at 481. Under *Bogle*, Section 922(g)(1) is constitutional, and the Second Amendment does not provide a basis for dismissing Mr. Chaney's indictment. If the Second Circuit issues a decision overruling *Bogle*, I will of course entertain a motion for reconsideration.

## CONCLUSION

For the foregoing reasons, Mr. Chaney's motion to dismiss the indictment is DENIED. Because I deny the motion on the threshold issue of whether *Bogle* is still controlling, I need not and do not reach the two-step *Bruen* analysis. I join other judges, however, in expressing my concern over the unworkability of that analysis.

As Judge Carlton Reeves of the District Court for the Southern District of Mississippi wrote, "Judges are not historians. We were not trained as historians. We practiced law, not history. And we do not have historians on staff. Yet the standard articulated in *Bruen* expects us to play historian in the name of constitutional adjudication." *Bullock*, 679 F. Supp. 3d at 507–08 (quotation omitted). Step two of the *Bruen* analysis "has no accepted rules for what counts as evidence";

7

rather, "the rule of evidence appears to be: if I agree with it, it's evidence—if I don't, it's not . . . . [Judges] need only select a favorable analogue from a friend in the legal academy" to justify upholding or invalidating a regulation on firearms. *Id.* at 530–31 (quotations omitted). Judge Reeves is not alone in his grave apprehension about *Bruen*'s methodology and implications. *E.g.*, *United States v. Jackson*, 661 F. Supp. 3d 392, 406 (D. Md. 2023) ("'Courts are, after all, staffed by lawyers, not historians' and '[l]egal experts typically have little experience answering contested historical questions or applying those answers to resolve contemporary problems.'" (quoting *Bruen*, 591 U.S. at 107 (Breyer, J., dissenting))); *United States v. Kelly*, No. 22-CR-37, 2022 WL 17336578, at *3 (M.D. Tenn. Nov. 16, 2022) (expressing concern over "the necessity of deciding serious criminal cases—involving pressing questions of individual liberty and public safety—based on the arguments of non-historian lawyers, citing cases by non-historian judges, who relied on arguments by other non-historian lawyers, and so on in a sort of spiral of 'law office history'" (quoting *Bruen*, 597 U.S. at 108 (Breyer, J., dissenting))); *United States v. Hill*, No. 23-CR-114, ––– F. Supp. 3d ––––, 2023 WL 8238164, at *14–*15 (E.D. Va. Nov. 28, 2023) ("[W]hen a district court is called . . . to turn its analysis into an *entirely* historical one, the judgments morph from nuanced to, essentially, unattainable. . . . [T]rial courts undeniably lack the resources to thoughtfully, much less exhaustively, conduct the *Bruen* analysis demanded of them."); *United States v. Yates*, No. 21-CR-116, 2023 WL 5016971, at *2 n.1 (D. Idaho Aug. 7, 2023) ("The fact that earnest and careful judges can pore over the same source material and reach opposite conclusions illustrates how difficult a standard 'the Nation's historical tradition' can be.").

I share these concerns. I am at least hopeful that, as the Second Circuit addresses the constitutionality of Section 922(g)(1) and other regulations in the wake of *Bruen*, it is able to

provide some analytical and evidentiary guardrails to guide district courts' assessments of the history and tradition of firearm regulation.

SO ORDERED.

                                                  /s/  
                                        Allyne R. Ross  
                                        United States District Judge

Dated:       May 21, 2024  
              Brooklyn, New York